## Riley M. Virtue v. The People of the State of Illinois.

### Gen. No. 4,489.

1. "ABANDON"—*as used in Wife Abandonment Statute, defined.* The word "abandon" as here used is synonymous with the word "desert."

2. WIFE ABANDONMENT—*how statute providing penalty for, construed.* This statute is penal in character and should be strictly construed.

3. WIFE ABANDONMENT—*what essential to conviction for.* The abandonment contemplated by the statute upon this subject must be of such a character which would, if continued for two years, sustain the charge of desertion in a suit for divorce.

4. WIFE ABANDONMENT—*what defense to prosecution for.* It is a good defense to a prosecution for wife abandonment to show that the defendant had separated from his wife by virtue of an agreement between them.

5. WIFE ABANDONMENT—*what not defense to prosecution for.* It is not a defense to a prosecution for wife abandonment for the husband to say upon the trial of the charge against him that he was then willing to live with his wife.

Prosecution for wife abandonment. Error to the Circuit Court of Henry County; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in this court at the April term, 1905. Reversed and remanded. Opinion filed August 1, 1905.

ANDREWS & ANDREWS, for plaintiff in error.

W. H. STEAD, Attorney-General, and CHARLES E. STURTZ, State's Attorney, for defendant in error.

MR. JUSTICE FARMER delivered the opinion of the court.

Plaintiff in error was indicted under section 1 of the Act of 1903, for abandoning and neglecting and refusing to maintain and provide for his wife. He was found guilty by a jury, sentenced by the court to six months in jail and to pay a fine of $300, and he brings the case here by writ of error. He was married to his wife in March, 1904, and lived with her until November 17th of the same year. Mrs. Virtue testified that from about the first of September to the time she left the house she was living in with her hus-

band, plaintiff in error, every day and sometimes oftener, requested her to leave and told her if she did not do so he would put her out, that he did not have to support her and would not do so. She says he persisted in this treatment and conduct toward her until there was no pleasure in living with him and she moved her furniture and household effects to rooms where she afterwards lived separate and apart from her husband, and where she received no support from him. It appears from the evidence that prior to the separation, plaintiff in error had selected rooms for his wife to move into, but these not being satisfactory to her, she engaged other rooms of her own selection where she had her household effects taken and where she has since resided. The drayman who hauled her furniture to these rooms was assisted by plaintiff in error. He does not pretend that he wanted his wife to live with him, nor deny that he desired and advised the separation. The evidence conclusively shows that for some reason not appearing in the record, plaintiff in error did not wish to live with his wife.

The defense was that he had not abandoned her, but that they had separated by mutual consent. On the trial plaintiff in error offered in evidence a written agreement between himself and wife, dated November 17, 1904, wherein it was stipulated that the parties had mutually agreed to live separate and apart from each other, and that in consideration of plaintiff in error paying his wife $25, and giving her a load of coal and heating stove, she released him from any obligation to support and maintain her. The court refused to permit the agreement to go in evidence.

The language of the statute is "That every person who shall, without good cause, abandon his wife," etc. We are of opinion the word "abandon," as here used, is synonymous with the word desert. Stanbrough v. Stanbrough, 60 Ind. 275; Moore v. Stevenson, 27 Conn. 14. While the statute is, to some extent, intended to authorize provision being made for an abandoned or deserted wife by directing

Virtue v. The People.

that the whole or a part of the fine imposed may be paid her, yet it is a penal statute and must be construed as other penal statutes are. The abandonment contemplated by this statute must be of such character as would, if continued for two years, sustain a charge of desertion in a suit for divorce.

Bishop on Marriage and Divorce defines desertion as " the voluntary separation of one of the married parties from the other, or the voluntary refusal to renew a suspended cohabitation, without justification either in the consent or the wrongful conduct of the other." In State v. Weber, 48 Mo. App. 500, which was a criminal prosecution of the husband under a statute very similar to ours, it is said: " Desertion and abandonment are used interchangeably, they mean the same thing. It is said that, to establish desertion, three things must be shown. First, cessation of cohabitation; second, the intention not to resume cohabitation, and third, the absence of complainant's consent to separation. Stewart on Mar. & Div. sec. 251. Separation then by mutual consent of husband and wife is not desertion in either. Id. 256." " Where one gives consent to the other's living apart, acting thereon is not desertion. The common expression of the doctrine is, that a separation by mutual consent of the parties is not desertion in either." Bish. on Mar. & Div., sec. 783. The case of Commonwealth v. Richards, 131 Pa. 209, is much in point. In that case it was held that an agreement of separation was not only competent evidence but a complete defense to a criminal prosecution against the husband to obtain an order for the wife's maintenance on the ground that he had deserted or abandoned his wife.

It could not be reasonably contended, we think, that where the wife was willing to or desirous of the separation and for a valuable consideration paid, entered into a written contract with her husband without coercion or fraud, to live separate and apart from him, that the husband would be subject to criminal prosecution for abandonment. While husband and wife are not permitted to release themselves

by contract from their marital obligations, yet they may live separate and apart by mutual consent, and when they do so, neither could maintain a bill against the other for divorce on the ground of desertion.  The statute was intended to provide for the punishment of husbands who wilfully and wrongfully desert and abandon their wives, and live separate and apart from them without justification either in the fault or consent of the wife.  Whether the provision of the contract releasing plaintiff in error from future liability to support his wife is valid or not, is not involved in this case.  What we hold is, that if Mrs. Virtue willingly and without coercion or fraud, agreed to her husband living separate and apart from her, he is not guilty of the criminal offense of wife abandonment.  Of course if it should appear that she was induced to sign the contract by a course of conduct that amounted to coercion, or that she was procured to sign it by fraud and for the purpose of avoiding the penalty of the statute, then it would not be a defense.  But in our view the court should have admitted the contract in evidence, and then the People should have been permitted to show, if it were the fact that they desired to do so, that Mrs. Virtue was induced to sign it under such circumstances as that it did not express her mind at the time, and, therefore, that the separation was not by mutual consent.  We can easily imagine circumstances under which a weak and timid wife could be induced by a coarse and brutal husband to sign papers or do many things contrary to her wishes, and which would not express her free mind; but that an agreement was thus obtained cannot be presumed in a case like this, but must be proven.

Plaintiff in error asked Mrs. Virtue if she had not told Rev. Mr. Monser in a certain conversation when he proposed to bring the trouble between herself and husband before the church board, not to do so as they had agreed upon a separation and the agreement would be carried out.  The People objected to this proof being made, and the objection was sustained.  Counsel for plaintiff in error then offered to prove this conversation by Rev. Mr. Mon-

ser, but on objection being made by. the state's attorney, was not permitted to do so. Whether Mrs. Virtue had agreed and consented to the separation was material and the court should have overruled the objection to the question asked her and have permitted her to answer. If she had denied making any such statement, it would then have been competent to contradict her by the witness Monser. We do not .think it was error for the court to refuse to allow plaintiff in error to answer the question asked by his counsel as to whether. he was then willing to take his wife back and live with her. If he was guilty of the statutory offense of abandoning and refusing to support and maintain his wife, he could not escape the penalties of the law by saying when placed on trial that he would take his wife back and live with her, and the evidence would, therefore, have been immaterial.

We deem it unnecessary to discuss the two instructions complained of further than to say that on the next trial of the case they should be made to harmonize with the views herein expressed.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*