People of the State of Illinois ex rel. Helen B. Witton, Appellant, v. George M. Harriss and Dorothy A. Harriss, Appellees.

Gen. No. 41,172.

Opinion filed November 26, 1940.

NICHOLAS A. SOCRATES, of Chicago, for appellant.

LATIMER, DONOVAN & BROWN, of Chicago, for appellees; DANIEL L. DONOVAN, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

This is an appeal from an order quashing a writ of *habeas corpus* wherein the relatrix sought the custody of "Baby Boy Breton," also called John Arnold Harriss, a child of six years of age.

The petitioner alleges that she was once described as Helen Breton and is the natural mother of the child in question, who is detained and unlawfully restrained of his liberty by respondents without any authority of law; that petitioner is advised that respondents detain the child by reason of a pretended decree of adoption of the county court of Cook county, Illinois. The petition then incorporates a certified copy of the following order of the county court of Cook county entered June 16, 1933:

"STATE OF ILLINOIS⎰ ss.     IN THE COUNTY COURT
COUNTY OF COOK  ⎰           OF COOK COUNTY.

"IN THE MATTER OF THE PETITION OF⎱ DECREE FOR ADOP-
GEORGE M. HARRISS AND DOROTHY A.⎰ TION
HARRISS TO ADOPT BABY BOY BRETON⎰

"On this day came the petitioners, by Ralph E. Batten, their attorney, and this cause coming on to be heard upon the petition herein, and evidence adduced by the petitioners, and the Court having heard the testimony in open court, and the arguments of counsel, and now being fully advised in the premises,

"The Court Finds that it has jurisdiction of the parties hereto and of the subject matter hereof; that the allegations in said petition are fully proven; that Baby Boy Breton was born in Chicago, Illinois, on the 30th day of September, A. D. 1932, to Helen Breton, an unmarried girl of legal age, the only legal parent. Said child was found in Cook County, Illinois.

"The Court Finds that the mother of said child, has abandoned said child, and consented in writing to the adoption of said child, by the petitioners, George M. Harriss and Dorothy A. Harriss, and has filed her appearance.

"The Court Finds that Elizabeth A. Bettridge has been duly appointed Guardian ad Litem, by the Court, for and on behalf of said minor child, Baby Boy Breton.

"The Court Further Finds that the consent of the Department of Public Welfare, of the State of Illinois, has been obtained and produced herewith.

"The Court Further Finds that said child is a male child, of the age of two weeks; that its present name is Baby Boy Breton; that the petitioners are of sufficient ability to bring up the said child, and furnish suitable nurture and education therefor; and that it is fit and

proper that such adoption should be made, and for the best interest of said child.

"It Is Therefore Ordered, Adjudged and decreed, in accordance with the Statute in such cases made and provided; that from this date said child, Baby Boy Breton shall, to all legal intents and purposes, be the child of the petitioners, George M. Harriss and Dorothy A. Harriss, and for the purpose of inheritance and all other legal incidents and consequences, shall be the same as if he had been born to them in lawful wedlock.

"It Is Further Ordered, Adjudged and decreed, that the name of said child be changed to John Arnold Harriss, according to the prayer of the petitioners herein."

The petition then incorporates the verified petition for adoption filed by respondents in the adoption proceeding, which reads as follows:

"STATE OF ILLINOIS⎫
 COUNTY OF COOK ⎬ ss.

"IN THE COUNTY COURT OF SAID COUNTY

"IN RE PETITION OF GEORGE M. ⎫
 HARRISS AND DOROTHY A. HARRISS ⎬ No. 67290
 TO ADOPT BABY BOY BRETON ⎭

"PETITION FOR ADOPTION

"Your petitioners, George M. Harriss and Dorothy A. Harriss, husband and wife, respectfully show that they reside in Chicago, in the State of Illinois.

"Your petitioners further show that they desire to adopt Baby Boy Breton, a male child, according to the Statute in such case made and provided; that said child is about the age of Two Weeks. Said child was found in Cook County, Illinois.

"Your petitioners further show that the cause for adoption of said child is that the mother, Helen Breton, an unmarried girl of legal age, the only legal parent,

cannot furnish suitable nurture, maintenance and education for said child, and has abandoned said child, has filed her appearance, and has consented in writing to said adoption.

"Your petitioners further show that the last known residence of the mother of said child, so far as is known to your petitioners, is Chicago, Illinois.

"Your petitioners further show that the names of the persons having the custody of said child are George M. Harriss and Dorothy A. Harriss, residence—5555 Everett Avenue, Chicago, Illinois.

"Your petitioners request that Elizabeth A. Bettridge be appointed Guardian ad Litem to appear for and in behalf of said minor child, Baby Boy Breton.

"Your petitioners further show that they are of sufficient ability to bring up the said child, and furnish suitable nurture and education therefor.

"Wherefore, your petitioners pray that the mother, Helen Breton, be made a party defendant and be required to answer this petition, according to the statute in such case made and provided and that in default of such answer, the petition herein may be taken as confessed by the said mother.

"Wherefore, your petitioners pray this Honorable Court for leave to adopt as their own child, the said Baby Boy Breton, and that the name of said child be changed to that of John Arnold Harriss.

"And that such other order or orders may be made, as to law and justice may appertain.

"GEORGE M. HARRISS
"DOROTHY A. HARRISS"

The petition then alleges that the allegations in the petition for adoption that the relatrix could not furnish suitable nurture, maintenance and education for the child, and that she had abandoned the child, were untrue. The petition then incorporates a certified copy of a written consent to the adoption, which was

signed by her and filed in the adoption proceedings, which reads as follows:

"IN THE MATTER OF THE ADOPTION ⎱
OF BABY BOY BRETON, ⎰

"I, Helen Breton, unmarried, of Chicago, Illinois being of legal age, and the mother of a male child, who was born on the 30th day of September, 1932, in Chicago, Cook County, Illinois, do hereby relinquish all the right, and interest, of every kind, nature and description, which I now have, or may have, in and to said minor child, and I do hereby enter my appearance in said adoption case, and waive issuance and service of summons on me and consent to an immediate hearing, and to the entry of the decree for adoption, as prayed for in the petition for adoption, and waive all my right to appeal, or writ of error. I do hereby consent to the adoption of the said child, by the petitioners, George M. Harriss and Dorothy A. Harriss, his wife.

"I hereby consent to the appointment of the Guardian ad Litem for said Baby Boy Breton, and hereby confirm all acts, as Guardian ad Litem for the purpose of adoption.

"Helen Breton

"Witnesses:
"Robt. A. Black
"Lucille Lansen

"STATE OF ILLINOIS ⎱ ss.
COUNTY OF COOK ⎰

"On this 14 day of October, 1932, personally appeared before me, Helen Breton, the person who signed the foregoing instrument, and acknowledged that the said instrument was her free and voluntary act, and was executed and delivered for the use and purpose therein set forth.

"Fern Hunt (NOTARIAL)
"(SEAL)"

The petition then alleges:

## "VII

"That the said decree for adoption was rendered only upon the ground of the aforesaid alleged consent on behalf of your petitioner; that such alleged consent was not given freely, voluntarily and understandingly by your petitioner; that said alleged consent was obtained from your petitioner by undue influence, and that your petitioner was misled, deceived and overreached in the execution of the alleged consent; that your petitioner was taken to the hospital a few hours prior to the birth of said child by the nurse of one of the physicians, and there registered by said nurse as 'Mrs. Helen Breton' without petitioner's knowledge or consent; that the said child was born on September 30, 1932, and was not named or christened, though the said child is described as 'Baby Boy Breton' in the adoption proceedings; that your petitioner paid the said hospital for nursery for said child fifteen dollars, being one dollar per day from September 30, 1932, to October 14, 1932; that, three days after the birth of said child, her said physician advised your petitioner that, owing to her weakened condition, some suitable home be found for the said child where it would have proper care until she was able to give it her personal care; that the said physician informed her that he would make an inquiry as to some suitable home; that, on October 12, 1932, she wrote and requested information from her said physician as to the names, occupation, religion and ability of the persons who would care for said child, until she was able to give it her personal care; that, when her said physician received her request, he called on your petitioner and informed her for the first time that there was only one thing to do for the said child and that it was imperative that it be placed for adoption; that she absolutely refused to permit the adoption of her child and so informed her said physician; that on October 14, 1932, when the petition for adoption was signed and acknowledged, she

was called by said physician to his office and he insisted and demanded that she immediately sign a paper placing the child in a home for adoption; that she refused to do so and began to cry; that the said physician placed a folded paper before her and told her she must sign it; that she was ill and in tears and it was necessary to guide her hand; that she did not know the contents of the paper as it was folded and only the bottom part bearing her signature was exposed; that she was improperly induced to refrain from reading said paper; that she did not, at any time, consent to the adoption of her said child by the respondents, and upon information and belief states the fact to be that the names of the respondents were inserted after her alleged signature on said paper; that she requested the said physician not to use the paper until she could give the matter serious consideration, but the said physician disregarded her instructions and immediately delivered the consent to the respondents or their agents.

## "VIII

"That she is informed and believes, and upon such information and belief so states the fact to be, that the respondents herein were desirous of adopting a child for themselves for some time; that they had directed the physicians in the hospital to find a healthy child which might be adopted; that the physicians in her case, immediately after the birth of her child, evidently communicated with the respondents, without the knowledge or consent of your petitioner, and arranged for the adoption; that she did not, at any time, intend to parcel her child for adoption to any one; that she was able to rear, maintain, nurture and educate her own child and was financially able to do so.

## "IX

"That the said adoption proceedings were held simultaneously with the filing of the alleged consent:

that she did not know that the paper she signed, under the circumstances hereinbefore described, was in fact a consent for adoption; that, when she discovered that the said child was taken from the hospital and adopted by the respondents, she immediately made efforts to regain her child; that, about three weeks after said adoption, she wrote to her said physician informing him that she was in a position to care for her child; that the said physician sent his nurse to your petitioner and she was told by the nurse to struggle along for a while and they would see what could be done; that, during the year 1933, she had frequent talks with said physician, in which she insisted upon the return of her child; that the said physician informed her that he would take the matter up with the respondents and report to her; and that he then told your petitioner that he had taken the matter up with the respondents and that both of the respondents refused to return the said child; that the said respondents and the physicians failed and neglected to register the birth of said child, and that she registered the birth on June 28, 1938, with the Board of Health; that, in August, 1934, she consulted attorneys who made a motion to vacate the decree for adoption in the County Court, and, upon the hearing of the said petition, the motion to vacate was denied; that, in October, 1934, she consulted other attorneys for the purpose of filing proceedings to regain her said child, but said attorneys, without fault on the part of your petitioner, did not proceed with the matter.

## "X

"That there is no appeal from the County Court and your petitioner is informed that the proper remedy is an application for a writ of Habeas Corpus.

## "XI

"That your petitioner, being the natural mother of said child, is better suited to rear, maintain, nurture

and educate her child; that it is to the best interests of said child to be with his natural mother; that she is a fit and proper person to have her child and well able financially and otherwise to rear, maintain, nurture and educate her said child.

## "XII

"The petitioner further prays, in the alternative, that, should the court deny the relief hereinbefore asked, she be permitted to visit the said child; that, under the laws of the State of Illinois, the relation between the natural parent and the child is not totally destroyed by the adoption; that, she, being the natural parent, is primarily liable for the support, maintenance and education of the said child, and that, by reason thereof, she is vitally interested in the said child and its rearing."

The return of the respondents to the writ denies that the child was detained and unlawfully restrained of his liberty by them without any authority of law; alleges that they are in lawful possession of and have all rights to said child by reason of the adoption proceedings had in the county court of Cook county, and also by reason of the subsequent proceedings had therein in the said court; that all of the requirements under the laws of the State in respect to adoption were complied with in the county court proceedings; that on May 2, 1934, the relatrix filed in the county court of Cook county, in the adoption proceedings, the following verified petition to vacate the decree of adoption:

"STATE OF ILLINOIS⎫ ss.
  COUNTY OF COOK ⎬

"IN THE COUNTY COURT OF COOK COUNTY

"PETITION OF GEORGE M. HARRISS ⎫
  AND DOROTHY A. HARRISS, TO  ⎬ No. 67290
  ADOPT BABY BOY BRETON      ⎭

## "Petition

"To the Honorable Judges of the County Court:

"1. Your Petitioner, Helen Breton, respectfully represents unto this Honorable Court, that on or about the 30th day of September, A. D. 1932, she gave birth to a baby boy, at the Passavant Hospital, Chicago, Illinois.

"2. Your Petitioner further represents unto this Honorable Court, that she was at the time of the birth of this child, an unmarried woman.

"3. Your Petitioner further represents, that on or about the 16th day of June, A. D. 1933, a Decree of Adoption was entered.

"4. Your Petitioner further represents, that about a day or so after the birth of the child, she was visited by the physician who had charge of her case, and by the father of the child, who then and there had a conversation with your petitioner, despite the fact that your Petitioner was a very sick person.

"5. Your Petitioner further represents, that the sum total of this conversation was that your Petitioner was not fit to care for her child; that the child was branded for life, and that it would be to the best interest of all parties concerned, that certain friends of the attending physician be permitted to adopt this child.

"6. Your Petitioner further represents, that she refused to consider any such proposals, but that these parties persisted in the proposals, and your Petitioner was alone and friendless and almost penniless and insane with grief and ill from the effects of confinement.

"7. Your Petitioner further represents, that she was continuously called by the father of her baby boy over the telephone, and with personal conversation, threatened to have her name in headlines on the front page of newspapers unless she consented to said adoption.

"8. Your Petitioner further represents, that even while she was confined in the hospital, she was threatened, coerced and coaxed into consenting to said adoption.

"9. Your Petitioner further respectfully represents, that in her weakened and grief stricken condition, and not knowing what she was really doing, seeking to escape from the mental torment by the various people, consented to said adoption.

"10. Your Petitioner further respectfully represents, that she never willingly consented to said adoption, and that said adoption proceedings were never sanctioned by said Petitioner, despite the fact that she signed the consent to said adoption.

"11. Your Petitioner further respectfully represents, that she has not had one moment of mental or physical relief since said adoption, and feels that unless this Honorable Court grants her the custody, maintenance and care which she, as a mother, is rightfully entitled to, serious consequences will result as to her well being.

"12. Your Petitioner further respectfully represents, that she is not interested in any money settlement or any other relief, except that of the custody of said child, and that your Petitioner prays that this Honorable Court, by virtue of the power and authority therein vested, will vacate the Order of Adoption entered on June 16th, A. D. 1933.

"And your Petitioner will ever pray.

"Helen Breton
"Petitioner

"STATE OF ILLINOIS ⎫
 COUNTY OF COOK  ⎬ ss.

"Helen Breton, being first duly sworn on oath, deposes and says that she has read the foregoing Petition by her subscribed; that she knows the contents thereof, and that the same are true in substance and in fact.

"Helen Breton"

(Here follows the jurat.)

The respondents then aver that they filed the following verified answer to the petition to vacate:

"State of Illinois ⎱ ss.
County of Cook ⎰

"In the County Court of Cook County.

"Petition of George M. Harriss and Dorothy A. Harriss, to Adopt Baby Boy Breton ⎱ No. 67290

"Answer to Petition of Helen Breton to Vacate Decree of Adoption

"George M. Harriss and Dorothy A. Harriss, respondents, answering the petition of Helen Breton, in this action, say:

## "I.

"That as to the allegations of Paragraph 1 of said petition, they admit that on or about the 30th day of September, A. D. 1932, the petitioner gave birth to a baby boy, at the Passavant Hospital, Chicago, Illinois.

## "II.

"That as to allegations of Paragraph 2, they admit that the petitioner was, at the time of the birth of this child, an unmarried woman.

## "III.

"That as to the allegation of Paragraph 3, they admit that a decree of adoption was entered on to-wit: the 16th day of June, A. D. 1933.

## "IV.

"That as to the allegations of Paragraphs 4 to 12, inclusive, of said petition, they have no knowledge sufficient to form a belief.

## "V.

"And for a defense to this action, respondents allege:

"1. They affirm the truth of each and every allegation and representation contained in their petition to adopt baby boy Breton, heretofore filed herein, which petition is hereby, by reference, incorporated in this answer and made a part hereof.

"2. That said child is now approximately twenty-one months old; that when said child was approximately two weeks old, he was given into their care and custody, and that they have continued to care for and nurture said child, from that time until the present; that it is for the best interest of said child that he remain with these respondents, in the home which they have provided for him; that said child is happy in his present surroundings and environment and is sustained by the love and affection of these respondents, who have nurtured and cared for him, in sickness and in health, since he was approximately two weeks old; that these respondents are of sufficient ability to continue to care for and nurture the said child and to provide him with a suitable education.

## "VI.

"And for a further and separate defense to the petition, these respondents say that the decree of adoption heretofore entered herein on to-wit: June 16, 1933, was entered at a term of court long since expired; that said decree of adoption was entered in compliance with and in conformity with the statute in such case made and provided, as will more fully appear from the files herein; that this Court derives its power and authority in such matters by virtue of an act of the general assembly, entitled 'An act to revise the law in relation to the adoption of children,' approved February 27, 1874, and in force July 1, 1874, as amended May 25,

1907; that this court has no power, authority or jurisdiction, by virtue of said act, to vacate or modify the decree of adoption heretofore entered herein.

"George M. Harriss
"Dorothy A. Harriss

"STATE OF ILLINOIS \
COUNTY OF COOK / ss.

"George M. Harriss and Dorothy A. Harriss, being duly sworn, depose and say that they have read the foregoing answer by them subscribed and that the same is true, to the best of their knowledge and belief.

"George M. Harriss
"Dorothy A. Harriss"

(Here follows the jurat.)

The respondents further allege:

"Thereafter in open court a hearing was had, testimony was taken and arguments of counsel were heard, and after a full and complete hearing the Honorable J. G. Van Kunen, acting judge of the County Court, on to-wit the 9th day of August, 1934, entered an order overruling and denying the petition and motion of Helen Breton, now Helen Witton, to vacate the said decree of adoption entered June 16, 1933, which order is in words and figures as follows:

" 'This day, after a hearing, the motion of Defendant's mother to vacate Decree is filed and thereupon, after a hearing, said motion is hereby overruled and denied.'

"6. These respondents further answering state that by reason of said proceedings in the County Court as hereinbefore set forth, a court of competent jurisdiction has declared that said adoption proceedings were valid, that there was no fraud or duress in connection therewith and that the consent of Helen Breton, now Helen Witton, was freely and voluntarily given, and said court of competent jurisdiction has heretofore determined after a full and complete hearing all of the

matters and things now contained in the petition for Writ of Habeas Corpus herein filed and that by reason therefor the matter is now res judicata and cannot be attacked in this proceeding herein filed. Wherefore, and by reason of which said Writ of Habeas Corpus should be quashed.

"7. These respondents, without waiving any rights obtained by reason of said proceeding in the County Court of Cook County, further answering specifically, the allegations contained in Paragraphs IV and subsequent paragraphs of the petition for Writ of Habeas Corpus, state with respect to the allegations in Paragraph IV that they deny that at the time of the adoption Helen Breton was of sufficient ability to furnish suitable nurture, maintenance and education for said child.

"8. These respondents answering the allegations contained in Paragraph V state that the petitioner had abandoned her child and these respondents are advised and informed and upon such information and belief state that any moneys paid for hospital care, being material, were paid by others for and on behalf of Helen Breton.

"9. These respondents further answering the allegations contained in Paragraph VII deny that the consent given by Helen Breton was not given freely, voluntarily and understandingly by said Helen Breton and state further that a court of competent jurisdiction, to-wit the County Court of Cook County in the proceedings resulting in the order of August 9, 1934, has conclusively determined that said consent was given freely, voluntarily and understandingly by said Helen Breton.

"10. These respondents further answering the allegations contained in Paragraph VII deny that said consent was obtained from Helen Breton, now Helen Witton, by undue influence, and deny that Helen Breton, now Helen Witton, was misled, deceived and

overreached in the execution of said alleged consent, all of which allegations have been conclusively determined in proceedings in the County Court resulting in the order entered August 9, 1934.

"11. Respondents further answering have no information except as contained in the petition for writ of Habeas Corpus that Helen Breton, now Helen Witton, was taken to the hospital a few hours prior to the birth of the child by the nurse of one of the physicians, and there registered by the nurse as Mrs. Helen Breton without petitioner's knowledge or consent, and admit that said child was born on September 30, 1932, but have no information except as contained in said petition that the child was not named or christened.

"12. Further answering the allegations contained in Paragraph VII your respondents are informed and believe and from such information state it to be a fact that money paid for hospital was paid on behalf of said Helen Breton by the father of said child.

"13. Your respondents further answering the other allegations contained in Paragraph VII deny said allegations as therein set forth and state that they are informed and believe and on such information and belief state it to be a fact that the physician attending said Helen Breton, now Helen Witton, from the time of the birth of the child until the signing of the consent on October 14, was repeatedly requested by Helen Breton to find a suitable home for the baby born to her with people who would adopt said child, and thereupon said physician agreed to assist and help said Helen Breton, now Helen Witton, with respect thereto; that on, to-wit, October 14, 1932, when said petition for adoption was signed and acknowledged the said consent was signed and acknowledged by Helen Breton, now Helen Witton, freely and voluntarily in the presence of the witnesses whose names appear upon said consent and in the presence of the Notary Public who had no connection with the witnesses, said Helen

Breton or these respondents; that said physician nor anyone else ever placed a folded paper before Helen Breton, now Helen Witton, and told her she must sign it; deny that it was necessary to guide the hand of Helen Breton, now Helen Witton, or that anyone did guide her hand; deny that [she] did not know the contents of the paper; deny that she was improperly induced to refrain from reading said paper but on the contrary state that said Helen Breton, now Helen Witton, for a long period of time after said consent was given to her and before she signed same in the presence of the witnesses and the Notary Public considered same and then voluntarily signed same.

"14. Your respondents further answering the allegations contained in the last part of Paragraph VII deny that the names of the respondents were inserted after her signature was upon said paper, but on the contrary state the fact to be that at the time said consent was signed said names of respondents were on said paper; deny that the said physician was not to use said consent until said Helen Breton, now Helen Witton, should give the matter serious consideration or that said physician disregarded her instructions in any way.

"15. These respondents further answering state that all of the allegations herein in Paragraph VII contained were presented the County Court of Cook County in the hearing resulting in the order of August 9, 1934, and have conclusively determined by said court.

"16. These respondents further answering the material allegations contained in Paragraph VIII deny that the petitioner did not at any time intend to parcel her child for adoption to anyone and deny that she was able to rear, maintain, nurture and educate the child and was financially able to do so.

"17. These respondents further answering the allegations contained in Paragraph IX deny that said

petitioner Helen Breton, now Helen Witton, did not know that the paper she signed was in fact a consent to adoption, but state the fact to be that she voluntarily and freely signed same knowing the contents thereof.

"18. These respondents further answering have no information as to the allegations contained in Paragraph IX with respect to the petitioner writing to her physician or that physician sent his nurse to Helen Breton, and if the same are material demand strict proof thereof.

"19. Your respondents have no information as to physicians failing and neglecting to register the birth of said child or that the said Helen Witton registered said birth on June 28, 1938 with the Board of Health, but the same is immaterial.

"20. These respondents further answering the allegations contained in Paragraph IX admit that a motion to vacate the decree for adoption in the County Court was made by said Helen Breton, now Helen Witton; that a hearing was had upon said petition and that said motion to vacate was denied, all of which matters and things were hereinbefore set forth in detail by your respondents and which your respondents state conclusively determine the proceedings herein.

"21. Your respondents further answering the allegations contained in Paragraph XI deny that said petitioner is entitled to rear, maintain, nurture and educate said child; that by reason of said adoption proceedings so properly had and concluded and by reason of the Statute of the State of Illinois in such case made and provided, all rights with respect to said child are vested in your respondents who are fit and proper persons to have custody of the child and are well able financially and otherwise to rear, nurture and educate said child.

"22. Your respondents further answering the allegations contained in Paragraph XII deny that said petitioner Helen Breton is entitled to the alternative

relief therein pray [ed]; deny that under the laws of the State of Illinois where adoption proceedings have been held to be proper as in the case before this court she is entitled to any right of visitation or that she is primarily liable for the support, maintenance and education of said child.

"Wherefore, these respondents having made full and complete return to the writ herein pray that the same may be quashed and your respondents will ever pray.

> "George M. Harriss
> "Dorothy A. Harriss"

(Here follows the verification.)

Appellant contends: "The relator's theory was that, there being no appeal or writ of error in adoption proceedings, she was entitled to maintain a petition for a Writ of *Habeas Corpus* to determine the legality of the detention of her child by the respondents, despite the denial of the motion to vacate the decree of adoption in the County Court;" that "the relator was entitled to a hearing on her.petition for a Writ of *Habeas Corpus* and the trial Court erred in holding that the matters alleged in the petition were *res judicata*, by reason of her motion to vacate the decree of adoption in the County Court, and in quashing the Writ of *Habeas Corpus* upon the ground." The respondents contend that the record shows that the trial court had jurisdiction of the subject matter and of the person of the relatrix in the adoption proceedings, and that therefore the decree entered in the proceedings cannot be collaterally attacked, as the relatrix attempts to do by the instant writ of *habeas corpus*. The respondents further contend that the question of the jurisdiction of the county court of the person of the relatrix at the time of the entry of the adoption order was submitted to the county court on May 2, 1934, when the relatrix filed her verified petition to vacate the adop-

tion order on the sole ground that her consent to the adoption was not given freely, voluntarily and understandingly, but was obtained by fraud and duress, and therefore the county court lacked jurisdiction of the person of the relatrix at the time it entered the adoption order, and that the county court, when it entered the order of August 9, 1934, denying the verified petition of the relatrix to vacate the decree of adoption, had jurisdiction of the subject matter and the person of the relatrix; that said order cannot be collaterally attacked by the instant writ and that the judgment of the county court finding that the consent of the relatrix was not obtained by fraud and duress is *res judicata*.

When the matter of the petition for a writ of *habeas corpus* came on for hearing there was an extended colloquy between the trial court and counsel for both parties. The trial court stated that the sole point made in the petition for a writ of *habeas corpus* was that the consent of the relatrix had been obtained by fraud and undue pressure, and that that point was also the sole point made in the petition of the relatrix filed in the county court to vacate the judgment of adoption, and that the county court, when it denied the petition to vacate, passed upon the sole point in question in the instant case, and therefore the point is *res judicata*. The trial court further stated that the judge of the county court saw the witnesses and heard the testimony upon the point in question, and passed upon the vital question of fact as to whether or not the consent was secured by fraud and misrepresentation, and that in the instant proceeding he had no right to sit as a reviewing court and pass upon the finding of the judge of the county court. Counsel for the relatrix conceded that the sole point raised in the petition for a writ of *habeas corpus* was passed upon by the judge of the county court when the motion to vacate was denied, but he argued in the trial court, as he argues here, that because the statute gives no appeal from an order

entered in an adoption proceeding in the county court, the "only remedy [of the relatrix] is by *habeas corpus.*"

"Jurisdiction of the subject matter and of the person is each a prerequisite to the validity of a decree of adoption. (*Hook v. Wright,* 329 Ill. 299.) . . . Where a court is exercising a special statutory jurisdiction the record must show upon its face that the particular proceeding is one upon which the court has authority to act. Jurisdiction in such cases is never presumed, and if it does not appear by the record the judgment is void and subject to collateral attack. (*Hook v. Wright, supra; Rice v. Travis,* 216 Ill. 249; *Payson v. People,* 175 id. 267.)" (*Ashlock v. Ashlock,* 360 Ill. 115, 120, 121.)

The *Ashlock* case, following the ruling in a number of other cases, holds that an attack directed against the proceedings to adopt a child being collateral, the sole inquiry to be made is whether the county court had jurisdiction to render the order. In the instant case it is conceded that the record in the adoption proceedings shows that the court had jurisdiction of the subject matter and of the relatrix. We do not deem it necessary to pass upon the contention of respondents that as the record in the adoption proceedings shows that the court had jurisdiction of the subject matter and of the person, the decree of adoption cannot be collaterally attacked by *habeas corpus* proceedings. For the purposes of this appeal, solely, we may assume that if it had not been for the judgment of the county court denying the motion of the relatrix to vacate the decree of adoption, that the instant writ would be a proper proceeding in which to test the question as to whether or not the consent of the relatrix was obtained by fraud and duress. But here we have a case where the relatrix raised that question in the county court on her motion to vacate and the question was determined adversely to her. She selected the forum in

which to have the question determined and she cannot now attack the decision of the county court by the instant writ. The trial court in the instant case was right in holding that the sole point raised in the petition for the writ is *res judicata*.

But the relatrix further contends that the instant petition prayed ''in the alternative, that she be permitted to visit the child because, under the laws of the State of Illinois, the relation between the child and the natural parent is not destroyed by the adoption and that she is primarily liable for the support, maintenance and education of the child,'' and that the trial court erred in quashing the writ of *habeas corpus* without passing upon her right to visit the child, even though the decree of adoption of the county court is a valid one. This point was not urged nor suggested before the trial court in the instant proceeding, and it is plainly an afterthought. Indeed, counsel for the relatrix agreed with the trial court that the sole question before the court related to the question of *res judicata*. Moreover, the court asked counsel for the relatrix if he had any other point besides the one that the consent was obtained by coercion and duress, and counsel failed to make any answer to the court's question. But, in any event, there is no merit in the instant contention of relatrix. Section 3 of the Adoption Act (Ill. Rev. Stat. 1939, ch. 4, sec. 3 [Jones Ill. Stats. Ann. 19.003]) reads: ''. . . from the date of the decree the child shall, to all legal intents and purposes, be the child of the petitioner or petitioners.'' Section 8 of the statute reads: ''The natural parents of a child so adopted shall be deprived, by the decree, of all legal rights, as respects the child, and the child shall be freed from all obligations of maintenance and obedience as respects such parents.'' The only case cited by the relatrix in support of the instant contention is *Dwyer v. Dwyer*, 366 Ill. 630. The superior court of Cook county held Thomas L. Dwyer to be in contempt

for failure to comply with an order to pay Frances Dwyer ten dollars per week for the support of their minor child, Thomas E. Dwyer. The Appellate Court reversed the order of the trial court and discharged the rule. The Supreme Court reversed the judgment of the Appellate Court and affirmed the judgment of the superior court. To quote from the opinion of the Supreme Court (pp. 631-634):

"The facts are stipulated. In the year 1927, Frances Dwyer procured a divorce in the superior court from defendant on the grounds of desertion. Their minor child was then about three years of age. By the consent of both parents, the child was adopted in the county court of Cook county by the maternal grandparents on the day prior to the entry of the divorce decree, which recites the adoption. Plaintiff waived alimony and the decree made no provision therefor, or for the support of the child. The grandfather died in 1931, insolvent, and, in 1933, the grandmother remarried and moved to the State of Texas. The child was thereafter supported by plaintiff. In December, 1934, she adopted the child in the county court and later, in the same month, filed a petition in the superior court against defendant for an order of support for the child, and solicitor's fees. His answer claimed non-liability because of the adoption proceedings. After a hearing, the court entered an order on January 28, 1935, requiring him to pay $10 a week for the support of the child, and $50 solicitor's fees. Notice of appeal and *praecipe* for record were filed, but the appeal was later dismissed. Defendant's petition to vacate the order was denied for want of equity. No appeal was taken from the latter order. In June, following, defendant made payment of the amount accrued, under a rule to show cause entered in May, and the rule was dismissed, with an order for $75 solicitor's fees. In January, 1936, plaintiff filed another petition for a rule to show cause, alleging arrears of

$80. Defendant's answer admitted $40 arrearage in payments, but challenged the jurisdiction of the court to enter the order of January 28, 1935. Upon a hearing the order adjudging him guilty of contempt was entered, finding the arrearage to be $80, and committing him to jail for not to exceed six months, or until he pay the amount of the arrearage. It is stipulated that defendant's only objection was that the court was without jurisdiction to enter any order against him.

". . .

"Section 3 of the Adoption Act (State Bar Stat. 1935, chap. 4, sec. 3; Smith-Hurd Stat. 1935, chap. 4, sec. 3;) provides that the decree shall order that, from its date, 'the child shall, to all legal intents and purposes, be the child of the petitioner or petitioners.' Section 5 provides: 'A child so adopted shall be deemed, for the purposes of inheritance by such child, . . . and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he shall not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation.' Section 8 provides: 'The natural parents of a child so adopted shall be deprived, by the decree, of all legal rights, as respects the child, and the child shall be freed from all obligations of maintenance and obedience as respects such parents.'

"In *Ryan v. Foreman,* 262 Ill. 175, relied upon by defendant, the issue was whether or not a minor adopted child was entitled to the pension of a deceased policeman, after the death of the widow. In the course of the opinion holding that he was so entitled, we said: 'While the legislature has not the power to abrogate the laws of nature and say who shall be natural children or offspring, it has the right to say and designate a class of persons who shall have all the

rights of children or shall stand in the relation of parents and children.' Quoting the above provisions of sections 3 and 5 we observed: 'The legal consequences and incidents arising from the relation of parent and child are many, and change, as time goes on, with changes of society, and vary according to the circumstances and means of the parties. They include the right of support, education and care from the parent by adoption. All such legal consequences and incidents are known to the law and embraced within the statute.' The question in that case was whether the legislature, in enacting the Police Pension Fund law, intended to include, within its provisions, adopted children as well as natural children, and we held it did.

"The statute does not provide that an adoption relieves the natural parents of their duty to support their offspring. The only express provision of the statute as to the respective rights and duties of natural parents and their children is found in section 8, which deprives the natural parents of all their legal rights in respect to the child, and frees the child from any obligation to maintain or obey the natural parents. An adoption of a child does not work a complete severance in the relationship between the child and its natural parents. The duty of a parent to support his. minor child arises out of the natural relationship, and while that duty may also be imposed upon the adoptive parents by statutory enactment, the natural parent may, *if necessity arises,* be required to perform that duty. *The primary duty of the adoptive parents to support* is in derogation of the general law, and it is for that reason that, as to the adopted child, the statute must be strictly construed. (*Keegan v. Geraghty,* 101 Ill. 26.) The statute is not to be construed as relieving the natural parents from all obligation to support their minor children." (Italics ours.)

The Supreme Court, in that case, expressly states that section 8 of the Adoption Act deprives the natural parents of all their legal rights in respect to the child, but holds that while, under the statute, it is the primary duty of the adoptive parents to support the child, the natural parent may, *"if necessity arises,"* be required to perform the duty of a parent to support his minor child. There is nothing in the opinion to support the contention that the relatrix, in the instant proceedings, might acquire the right of visitation. The Adoption Act states clearly the consequences that follow a legal adoption. It provides that from the date of the decree "the child shall, to all legal intents and purposes, be the child of the petitioner or petitioners;" that "a child so adopted shall be deemed, for the purposes of inheritance by such child, . . . and other legal consequences and incidents of the natural relation of parents and children, the child of the parents by adoption, the same as if he had been born to them in lawful wedlock . . . ." Visits of the natural mother to the child might subject the adoptive parents to continual embarrassment and pain, and at the same time tend to make the child unhappy and dissatisfied. Respondents allege that they have for seven years cared for the child, through sickness and health, and that they dearly love the child; that the petitioner makes no allegations reflecting on respondents or the manner in which they have performed their duty to the child, and they insist that their legal rights in respect to the child be protected by this court. We hold that the instant contention of petitioner is without merit.

The judgment order of the superior court of Cook county is affirmed.

*Judgment order affirmed.*

FRIEND, P. J., and JOHN J. SULLIVAN, J., concur.