**In re Petition of Reuben Ekendahl and Ethel Ekendahl, to Adopt Demetrios Svolos, Minor, Appellees, v. Athena Topol, Appellant. Eletrios Svolos, Defendant.**

**Gen. No. 42,354.**

458

Heard in the third division of this court for the first district at the October term, 1942. Opinion filed February 2, 1944.

JOHN H. LYLE and EDWARD T. HAVEY, both of Chicago, for appellant; ALFRED F. BECK, of Chicago, of counsel.

EDWARD E. FLEMING, of Chicago, for appellees.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an adoption proceeding with a decree in favor of petitioners from which the natural mother seeks to appeal. A motion was made in this court to dismiss the appeal on the ground that no appeal lies

from an adoption decree. The motion was taken with the case and decision on it is vital.

The common notion appears to be that there is no right to a review of a decree of adoption. In *Meyers v. Meyers,* 32 Ill. App. 189, the action of the circuit court dismissing a mother's appeal in an adoption proceeding was approved on authority of *People ex rel. Fullerton v. Gilbert,* 115 Ill. 59, and the court said the adoption proceeding did not bind the parents since they were not parties and that they should seek their relief in a writ of *habeas corpus.* This was prior to the 1907 Act which required that parents be made defendants. The *Gilbert case* decided that insanity proceedings being summary in nature, an appeal therein leaving patients at large, would be a frustration of the purpose of the Act; and that the law thereunder consideration provided by its terms a speedier remedy in *habeas corpus* proceedings. There was no question there of a writ of error. *In re Warner's Petition,* 193 Ill. App. 382, the decision in the *Gilbert case* was extended to an "appeal" in adoption proceedings because it also was a summary proceeding; and the court followed the *Meyers case,* although under the act then in force parents were indispensable parties. In *Holman v. Brown,* 215 Ill. App. 247, and *Dixon v. Haslett,* 232 Ill. App. 152, writs of error to review adoption proceedings were dismissed. Generally, the writ of *habeas corpus* has been used to test adoption proceedings (*Sullivan v. People,* 224 Ill. 468; *People v. Cole,* 238 Ill. App. 413; 322 Ill. 95; and *People ex rel. Witton v. Harriss,* 307 Ill. App. 283), in which counsel for the relators conceded "that because the statute gives no appeal from an order entered in an adoption proceeding in the county court, the *only* remedy is by *habeas corpus.*

A parent cannot find relief in every adoption proceeding by virtue of *habeas corpus,* for the inquiry under that writ does not go beyond the question of

jurisdiction. *People v. Hazard,* 356 Ill. 448; *People v. Siman,* 284 Ill. 28; *People ex rel. Witton v. Harriss,* 307 Ill. App. 283; *Ashlock v. Ashlock,* 360 Ill. 115. *Habeas corpus* here would not serve the mother's purpose for, in addition to her challenge of the court's jurisdiction, she attacks the decree on the merits. The decree finds in effect that she abandoned and deserted her child and that, by reason thereof and her failure to maintain or assist in his maintenance, she is unfit to have his custody. Under our Adoption Act, ch. 4, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 19.001 *et seq.*], a child may be adopted with the consent of its parents or those in place of parents; or with consent of one parent where the other is unfit; or without consent where both parents are unfit; or where the parents or others having right to consent have been deprived of custody by a court (section 3). The grounds of unfitness are specified in the section and include: ". . . (e) abandonment of the child, or (f) desertion of the child for more than six (6) months, etc. . . . ." Parents, now necessary parties, may answer as the mother did here and make issue on the allegations and the petition. The purpose of the Act serves unfortunate children, charitable adoptive parents, and the State very well, and every reasonable means should be employed to accomplish the purpose. Where consent is given or default made in answer by necessary parties, no difficulty arises, but where parents answer and contest the charge of unfitness and conflicting evidence is heard and a decree entered based on the court's findings from the evidence, consideration of the rights of natural parents must be admitted in viewing the purpose of the Act. Where parents are fit persons, the natural family should be kept together if possible. A great responsibility rests on a court in deciding that natural parents are unfit to have their own children, in depriving the parents of all rights over the child, and freeing the child of all ob-

ligations to them. (section 8.) If there is no right to review in proceedings of this kind, we share the concern of this court in the case of *People v. Cole,* 238 Ill. App. 413, over the predicament of natural parents under the state of the law on this point in Illinois.

In *Superior Coal Co. v. O'Brien,* 383 Ill. 394, 402, Mr. Justice WILSON in an exhaustive survey of the general subject of review in statutory proceedings in Illinois, said:

"It is established that in proceedings purely statutory and unknown to the common law, involving property rights or personal liberty, where no method of review whatever is provided but a writ of error is not expressly forbidden, a writ of error is allowed as a matter of right."

Adoption proceedings are purely statutory and no appeal or other method of review is provided in the act, but neither is writ of error expressly forbidden. The question remains whether personal liberty or property rights are involved. In *Holman v. Brown,* there was no claim that any property rights or liberty of any of the parties were involved. In *Dixon v. Haslett,* the court held that neither the property rights of the grandmother, plaintiff in error, nor the personal liberty of the infant was involved. In our view, to deny the natural mother her right to review under the circumstances in this case, would be to hold that a mother's child means less to her than her property or liberty. We believe that she had a right to sue out a writ of error from this court to review the adoption decree under the policy of this State. *Haines v. People,* 97 Ill. 161; *Superior Coal Co. v. O'Brien.* The right has not been affected by the 1935 amendment to the Adoption Act which withholds the act from the appeal provisions of the Civil Practice Act, (par. 13) for the amendment left the right to review as it was theretofore by writ of error. The mother here im-

providently filed notice of appeal, under the Civil Practice Act. We believe the liberal spirit of the day would condemn a refusal to consider her case for that reason. The motion to dismiss the appeal is, accordingly, denied.

The mother says the petition was insufficient under the Act and relies upon *Musselman v. Paragnik,* 317 Ill. 597 and *Keal v. Rhydderck,* 317 Ill. 231 to render it defective for failing to state the sex of the child, and upon *People v. Frentz,* 256 Ill. App. 259, because the allegation of past assistance negatived the charge of abandonment. In *McConnell v. McConnell,* 345 Ill. 70, the "strict compliance" rule in the *Keal case* was overthrown and the "substantial compliance" rule adopted under which we believe the petition was sufficient to give the court jurisdiction although the sex of the child was not given; and the petition here is not vulnerable in the same fatal manner as that in the *Frentz case.* She also contends that the decree is void for want of findings that the abandonment was for six months next preceding filing of the petition. There is no such requirement in the Act. It is argued also that the decree does not set forth the facts upon which the findings are made. Except as to appeal provisions, etc., the Civil Practice Act applies to the Adoption Act, ch. 4, par. 13, Ill. Rev. Stat. [Jones Ill. Stats. Ann. 19.012(1)]. Under the Practice Act, no special findings of fact are necessary. Chapter 110, par. 188 [Jones Ill. Stats. Ann. 104.064].

It is finally contended that the finding and decree upon the charge of abandonment are against the manifest weight of the evidence—the mother saying the facts show no intention to abandon, and that the child was under the supervision of petitioners under a "boarding contract" which was at the time to the child's best interests. The petitioners rely upon the evidence to show conclusively that when she boarded a train for Nevada to get a divorce from her husband,

the mother intended abandonment, which she persisted in for six years. There is no dispute upon the material facts and the question to be decided is one of law. The record shows that the child was born in the Auburn Park Hospital, October 1935, wherein for seven months Mrs. Ekendahl had charge of him. The first two months, while the child was premature and was in an incubator, his mother visited him at least twice a week. In November the father took the child home and the next morning returned him to the hospital because the mother had become violently ill, could not take care of him, and the next day she left for Nevada, under doctor's advice. In February 1936, at Reno she was granted a divorce and awarded exclusive custody of the child and his older sister and also allowed $75 a month for alimony and for the children's support. She remained in Nevada 14 months, too ill to be employed, before returning to Chicago in 1937. Some months after the mother had left Chicago for her health in 1935, the petitioner arranged with the father and parental grandfather of the child to retain custody of him in consideration of receiving $12 a week for his support. It appears that the grandfather made most of the payments which were later deducted from his employee son's pay. Ekendahls were paid under this arrangement up to May 1940, although apparently not according to agreement. In the Spring of 1936, the mother learned where the child was and wrote Mrs. Ekendahl, and in January 1937 came to Chicago, primarily to get the child and also to prepare herself in a business training school for a position in Reno. She stayed in Chicago a year and a half, visiting the child four or five times a month and told Mrs. Ekendahl she intended to take him back to Reno with her, but was informed the child was frail, of delicate health needing medical attention and she decided to leave him in Chicago a while longer. She never told the Ekendahls that she

intended to leave the child with them permanently, but maintained always that she would come back and get him. From 1936 until the petition was filed in January 1942, correspondence was exchanged between Mrs. Ekendahl and the mother and the latter sent gifts each Christmas except the last, 1941, when she sent a card. Three letters, received by the mother, were introduced in evidence, in which Mrs. Ekendahl thanks her for sending presents and for corresponding; and sends kisses from, and pictures of, the child. The mother did not demand payments under the divorce decree because she knew of the financial arrangement regarding the child. She was never given any statement of the support money received by petitioners; nor advised of any default in payments under the agreement; nor consulted about the proposed adoption; and knew nothing of it until she received a notice by publication and she immediately wired the clerk of the county court that she proposed to appear and contest the petition.

No cases cited have been helpful in determining what the proof should show in establishing a charge of abandonment. The decree found that the cause for the adoption was that the natural parents, unable to properly maintain the said child, had abandoned and surrendered him to the petitioners. Under our Criminal Code abandonment of a wife has been held synonymous with desertion (*People v. Seed,* 202 Ill. App. 486; *Virtue v. People,* 122 Ill. App. 223), but since the Adoption Act itself distinguishes between abandonment and desertion, those cases cannot aid, nor have we been able to find any Illinois case which does. Abandonment imports any conduct on the part of the parent which evinces a settled purpose of foregoing of parental duties and relinquishment of parental claims to the child. 1 Am. Jur. 643. It does not follow that the purpose may not be repented of and, in proper cases, all parental rights then acquired,

including that of preventing adoption by withholding consent; but, when abandonment is shown to have existed, it becomes a judicial question whether it really has been terminated, or can be, consistently with the welfare of the child. 1 Am. Jur. 643. The idea of relinquishment appears universal in defining the term. The basis for such an idea cannot be found in the evidence here.

The evidence shows that the mother lives in a four room cottage in a very good section of Reno, Nevada; that she makes her home in Reno because while there her health is good; that she lives with her mother and her daughter Betty, the older sister of the child involved in these proceedings; that she is a Civil Service employee of the United States Department of Interior, earning $125 per month; and that the father of the child is willing to support him as best he can, although his record on this score justifies little hope. The father testified that the child expressed a desire on several occasions to go home with him and asked about his sister. The mother says that the sister is anxious to have her brother at home. It appears that the child although baptized in the Greek Church is being brought up by petitioners in the Baptist Church. His mother and father both are of Greek ancestry. The petitioners appear to have greater income and are better situated financially than the mother. This, however, is not the determining factor. We think the evidence in this case clearly shows that the mother is able to maintain her child, and all the circumstances indicate that the child's best interests will be served by permitting him to be taken to the home of his mother where he shall live with her, his older sister and his grandmother, although the early adjustments necessary for the unfortunate child in his new environment may be painful. Our conclusions should by no means infer that the petitioners are not fit persons. On the contrary, they have shown that they have given the child unusual care and affection.

There is a conflict in the evidence as to how often the mother visited her child. Mrs. Ekendahl saying that she visited him about three or four times during his life and the first time when he was 18 months old. Of course, the residence in Nevada explains the protracted absence of 18 months. The mother testified that during her 18 months stay in and about Chicago in 1937 and 1938, she visited him at least four or five times a month. This contradiction does not remove the question from the field of law, for clearly, the mother never intended to surrender her right to him, but, on the contrary, her conduct leaves no doubt that she intended eventually to take him home. Under these circumstances we must conclude that the decree was erroneously entered and find as a matter of law that the child was not abandoned and that the decree of adoption should be and hereby is reversed.

*Decree reversed.*

HEBEL, P. J., and BURKE, J., concur.